*993 OPINION.
Van Fossan:
The principal question for our consideration is whether or not petitioner is entitled to classification as a personal service corporation under section 200 of the Revenue Act of 1918.
The Act specifies, among other things, three essential elements which must concur to constitute a corporation one of personal service — (1) the principal owners or stockholders must be regularly engaged in the active conduct of the affairs of the corporation; (2) its income must be ascribed primarily to their activities; and (3) capital (invested or borrowed) must not be a material income-producing factor. If any one of these elements is absent a claim for personal service classification must be denied. The statute also expressly excludes any corporation 50 per cent or more of whose income is derived from trading as a principal or from Government war contracts.
We have found as facts that less than 50 per cent of the petitioner’s income for 1920 was derived from trading as a principal and that none of its income was derived from Government war contracts. We think it is clear that its income is to be ascribed primarily to the activities of its four principal stockholders, namely, T. J. Davis, C. Bascom Slemp, P. W. Slemp, and E. M. Radway. There may be some question, however, as to whether or not all of the four principal stockholders were regularly engaged in the active conduct of the affairs of petitioner in conformity with the provisions of the statute, but, by reason of our view as to petitioner’s employment of Capital, we consider it unnecessary either to discuss or to decide that question.
During the year 1920 petitioner’s surplus and undivided profits increased from $761.06, the amount in January, 1920, to $50,171.03, the amount on December 31, 1920. In August, 1920, surplus and undivided profits amounted to $28,836.06; in September, 1920, to $40,307.14. Each of the remaining months of the year showed an increase over the preceding month. The petitioner’s capital was $8,000. It borrowed money in considerable amounts. It used both capital funds and borrowed money in furtherance of its business. It *994 extended credit of from 30 to 90 days to purchasers. It made advances to some of the producers of coal whose products it sold as agent. For example, the record shows that between March 8, 1920, and June 19,1920, it advanced $15,000 to the Montgomery Creek Coal Co., the product of which petitioner sold on commission. At the end of 1920 a balance of $11,980.38 of this advance was still unpaid. During 1920 petitioner’s earned commission on shipments made by the Montgomery Creek Coal Co. amounted to $2,914.32. Advances of money were also made to other shippers and a total of commissions amounting to $8,000 and upwards is shown by the records to have been earned on the shipments made by producers to whom such advances were made. The record also shows that some of such advances were necessary in order to help producers meet pay rolls. Whatever the use to which they were applied, the advances were made in order to assist these producers in the production and shipment of coal, the sale of which enabled the petitioner to earn commissions in a substantial amount. Under these circumstances it can not be said that capital was not a material income-producing factor. Consequently, in view of the provisions of section 200 of the Revenue Act of 1918, petitioner must be denied personal service classification. Kossar & Co., 4 B. T. A. 1164; Seaboard Mills, Inc., 5 B. T. A. 575; Denver Live Stock Commission Co., 7 B. T. A. 985; Potts-Turnbull Advertising Co., 14 B. T. A. 1321; Hubbard-Ragsdale Co. v. Dean, 15 Fed. (2d) 410; affd. 15 Fed. (2d) 1013; Denver Live Stock Commission Co. v. Commssioner, 29 Fed. (2d) 543; Conklin-Zonne-Loomis Co. v. Commissioner, 29 Fed. (2d) 698.
No evidence was presented in support of the second issue and the record as made does not justify the claim for special assessment.

Decision will be entered for the respondent.